

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERLINDA RAMOS-BOBADILLA,<br><br>Defendant. | Case No. 1:15-CR-290 |

## STATEMENT OF FACTS

The United States and the defendant, Erlinda Ramos-Bobadilla (also known as "Chinda," "Herlinda Bobadilla," and "Herlinda Ramos Bobadilla") (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. The defendant is a citizen of Honduras. She was born in or around October 1960.

2. From at least in or around 2006 and continuing thereafter up to and including October 8, 2015, in Honduras and elsewhere, the defendant and numerous others, including but not limited to Noe Montes-Bobadilla (also known as "Ton"), Alejandro Montes-Bobadilla (also known as "Pimpi" or "Tito Montes-Bobadilla"), Juan Carlos Montes-Bobadilla (also known as "Mono"), Jose del Trancito Garcia-Teruel (also known as "Pipo"), and Arnulfo Fagot-Maximo (also known as "El Tio"), knowingly and intentionally combined, conspired, confederated, and agreed to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B)(ii), and 963.

1

3. During the course of the conspiracy, the Montes-Bobadilla family operated a drug-trafficking organization based in the town of Francia in the Department of Colón, located on the northeastern coast of Honduras, bordering the Caribbean Sea. In Colón and the neighboring Department of Gracias a Dios, the Montes-Bobadilla organization (hereinafter, "Montes DTO") received maritime and clandestine air shipments containing large quantities of cocaine from sources in South America, primarily Colombia. After receiving a shipment of cocaine, the Montes DTO worked with other drug traffickers to transport the cocaine inland through Honduras into Guatemala and, eventually, Mexico, where the cocaine would then be imported into, and distributed within, the United States.

4. The Montes DTO was a family-run operation. The defendant's husband was the leader of the Montes DTO until his death in 2010. At or around that time, their son, Noe Montes-Bobadilla (hereinafter, "Noe Montes"), assumed control of the Montes DTO. The defendant, who had worked closely with her husband in their cocaine-trafficking business, remained a leader of the organization with Noe Montes. The defendant and Noe Montes worked with the defendant's other sons—Alex Adan Montes-Bobadilla (now deceased), Alejandro Montes-Bobadilla (now deceased), and Juan Carlos Montes-Bobadilla—to oversee all aspects of the family's cocaine-trafficking operations.

5. During and in furtherance of the conspiracy, the defendant played an active leadership role in the Montes DTO. On behalf of and in conjunction with other family members and leaders in the Montes DTO, she negotiated cocaine transactions—including the sale and purchase of cocaine—with other drug traffickers in Central and South America. The defendant also managed proceeds that the Montes DTO obtained from the sale of cocaine and kept track of how much cocaine was bought and sold, to whom, and for how much. The defendant sometimes

was responsible for paying sources of supply, using U.S. currency, for cocaine that the Montes DTO purchased.

6. During and in furtherance of the conspiracy, the defendant and her co-conspirators received cocaine from South America by go-fast boats, non-commercial aircraft, and submersible vessels. Individual shipments of cocaine that the defendant and her co-conspirators received usually carried hundreds of—and sometimes more than a thousand—kilograms of cocaine.

7. During and in furtherance of the conspiracy, the defendant and her co-conspirators purchased cocaine for resale and transported cocaine for other drug traffickers in exchange for a fee. When transporting cocaine for other traffickers, the defendant and her organization generally charged a fee based on a percentage of the amount of cocaine transported.

8. During and in furtherance of this conspiracy, the defendant and her co-conspirators supplied cocaine to the Los Valles organization, led by brothers Miguel Arnulfo Valle Valle and Luis Alonso Valle Valle, and the Los Cachiros organization, led by brothers Devis Leonel Rivera Maradiaga and Javier Eriberto Rivera Maradiaga. The defendant and her co-conspirators also transported cocaine for the Los Valles and Los Cachiros organizations. Over the course of this conspiracy, the defendant and her co-conspirators supplied and transported thousands of kilograms of cocaine for these organizations.

9. During and in furtherance of the conspiracy, the defendant and her co-conspirators received millions of dollars in U.S. currency derived from the sale and transport of cocaine. The defendant and her co-conspirators used these drug proceeds, in part, to finance their drug operations, pay their workers, and purchase property and businesses in Honduras.

10. During and in furtherance of the conspiracy, the Montes DTO employed dozens of workers to assist in its cocaine-trafficking operations. The defendant, in particular, employed

numerous individuals to work at her direction and control, including by providing security for her and her cocaine shipments. These individuals regularly carried firearms, including handguns and rifles, during and in furtherance of the defendant's drug-trafficking activities. The defendant knew and expected them to carry firearms during such activities.

11. During and in furtherance of this conspiracy, the defendant and her co-conspirators, often in concert with other Honduran drug traffickers, directed and carried out numerous acts of violence, including murder, to facilitate and protect the Montes DTO's drug-trafficking operations. The defendant and her co-conspirators also made payments to public officials in Honduras, including police officers and other law enforcement officials, to facilitate and protect the family's drug-trafficking operations. These payments, among other things, helped secure the passage of drug loads through Honduras without police intervention and provided the defendant with valuable intelligence regarding law enforcement efforts to disrupt her family's drug-trafficking operations and apprehend members of her family's organization.

12. In or about December 2009, General Julian Aristides Gonzalez was shot and killed by assassins. The Montes DTO and other Honduran drug-trafficking organizations conspired to finance this killing. The drug traffickers targeted General Aristides Gonzalez, the head of the Honduran anti-drug trafficking agency, because he had taken steps to disrupt the Honduran traffickers' operations through searches, seizures, and the interdiction of drug loads. Noe Montes paid Devis Leonel Rivera Maradiaga for the Montes DTO's agreed-upon share of the money used to finance the murder. The defendant knew of and assisted in procuring the Montes DTO's participation in the financing of this murder.

13. In or about June 2013, Miriam Yolanda Canales Ramos was shot and killed while at a beauty salon in Tocoa, Honduras. Yolanda Canales Ramos was a permanent resident of the

United States with a home and family in the Eastern District of Virginia. The defendant and Noe Montes coordinated and directed the assassination of Yolanda Canales Ramos because they believed that she was a U.S. government informant. On the day Yolanda Canales Ramos was killed, the defendant contacted Devis Leonel Rivera Maradiaga for assistance in locating the victim because the Montes DTO assassins, who had been following the victim, had lost track of her car at a police checkpoint in Tocoa. With Devis Leonel Rivera Maradiaga's assistance, the assassins located Yolanda Canales Ramos at the beauty salon, where they shot her to death.

14. The total amount of cocaine involved in this conspiracy for which the defendant is directly accountable is far in excess of 450 kilograms. The defendant participated in the acquisition, transportation, storage, and subsequent distribution of thousands of kilograms of cocaine during the course of her involvement in the conspiracy.

15. The defendant was aware that the cocaine that she participated in acquiring, transporting, storing, distributing, and conspiring to distribute was intended for illegal importation into the United States for further distribution.

16. The defendant agrees venue and jurisdiction lie with this Court pursuant to 18 U.S.C. § 3238.

17. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

18. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: <u>December 22, 2022</u>  By: _____
Thomas W. Traxler
James L. Trump
Anthony T. Aminoff
Assistant United States Attorneys

Arthur G. Wyatt, Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

By: _____
Douglas Meisel
Trial Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, ERLINDA RAMOS-BOBADILLA, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
ERLINDA RAMOS-BOBADILLA

I am Manuel Leiva, defendant's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Manuel Leiva, Esq.
Attorney for ERLINDA RAMOS-BOBADILLA